Federal Defenders
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and
Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

September 28, 2018

Ms. Roberta Houlton
U.S. Department of Probation
Eastern District of New York
147 Pierrepont Street
Brooklyn, NY 11201

    Re:    <u>U.S.A. v. Vladislav Khalupsky, 15 CR 381 (RJD)</u>

Dear Ms. Houlton:

    Below please find Mr. Khalupsky's response to the Presentence report.[1]

**Offense Conduct**

    1. Page 6, ¶10: Mr. Khalupsky's role in the conspiracy did not involve the employment of computer hackers.

    2. Page 7, ¶23: Mr. Khalupsky did not control the brokerage accounts of any of the co-conspirators in this case. Mr. Khalupsky owned and operated a trading firm called Dolphin Online Trading. Evidence presented at trial showed that traders at Dolphin were provided with ID and password information to three of Arkadiy Dubovoy's brokerage accounts. Those traders executed trades within those accounts. A number of other individuals, including Igor Dubovoy, had access to the accounts and traded in them as well. No one at Dolphin exercised control over these accounts. Arkadiy and Igor Dubovoy had the ability to and did change ID and password information in these accounts, denying Dolphin access. Dolphin had no way of directly taking any profits made on trades in these accounts. Instead, Mr. Khalupsky would submit a bill to Mr. Dubovoy for commissions based on the success of Dolphin trades in these accounts.

    At no time during the conspiracy charged did Mr. Khalupsky reside in Brooklyn. Mr. Khalupsky was residing in Odessa, Ukraine, during the entire period of this conspiracy.

---

[1] The response to the Offender Characteristics portion of the Presentence Report will be redacted from public filing because of the personal nature of the information they contain. Un-redacted copies of this response will be provided to all parties and the Court.

      3. Page 8, ¶28: Mr. Khalupsky met Arkadiy and Pavel Dubovoy at the same time, when they made an appointment to come to his Dolphin Online Trading office in Ukraine.  Mr. Khalupsky met Igor Dubovoy at the office at a later date.

      4. Page9, ¶31: Mr. Khalupsky cannot be considered to have become part of this conspiracy prior to August 2011 when he entered into a trading relationship with Arkadiy Dubovoy.  Mr. Khalupsky ended any trading relationship with Arkadiy Dubovoy, and thus any participation in the conspiracy, in April 2014.

      5. Page 10, ¶35: Upon information and belief, no evidence was provided at trial of the total number of press releases stolen by the computer hackers.  Evidence at trial demonstrated that the conspiracy made less than $20,000,000 in trading profits.

      6. Page 10, ¶38: Only one stolen press release was recovered from Mr. Khalupsky's email account.

      7. Page 12, ¶46: The IP address was one registered to Dolphin Online Trading.  Anyone in the Dolphin office in Odessa, Ukraine, would use this IP address to access the internet.

     Net profits in the TD Ameritrade account during the September 2011 through February 2012 totaled $2,693,605.  Please see exhibit A, TDA Summary trades.

      8. Page 12, ¶47: The emails exchanged between Mr. Khalupsky and the Dubovoys cannot be considered numerous.  Mr. Khalupsky emailed the Dubovoys less than once a month, on average, during his business relationship with Arkadiy Dubovoy.  These emails addressed requests for payment of Dolphin's commissions for the trades the company executed in the Dubovoy brokerage accounts.

     One email was sent addressing issues on executing trades to Arkadiy Dubovoy in February 2013.  There was no response to this email, and it was resent in October 2013.

     The evidence at trial showed that Mr. Khalupsky emailed himself 7 different screen shots of the Oracle Press release, all on the same day.

      9. Page 12, ¶49: Dolphin Online Trading stopped trading in the Dubovoy accounts in March 2013.  Mr. Khalupsky and Arkadiy Dubovoy came to a final accounting of monies owed and terminated their business relationship in April 2014.

      10.  Page 13,  ¶50: At no time did Mr. Khalupsky tell Arkadiy Dubovoy that he had access to or traded on stolen information from other computer hackers.

2

11. Page 13, ¶51: As discussed above and as demonstrated at trial, Mr. Khalupsky terminated his business dealings with Arkadiy Dubovoy in April 2014, and should not be considered part of the conspiracy after this date.

12. Pages 13-14, ¶¶54-59: We object to the shorthand use of "Khalupsky" to describe the trading in these accounts. As noted above, Mr. Khalupsky operated a trading firm called Dolphin Online Trading and all trades were executed by Dolphin employees. Again, not only did Dolphin execute trades in the Dubovoy accounts, but other individuals, including Igor Dubovoy, did as well.

13. Page 14, ¶60: The amount of unlawful gain in the offense is less than $20,000,000 in total, as stated by the government and demonstrated by evidence presented at trial.

14. Pages 14, 17, ¶¶61, 70-78: As noted above, Mr. Khalupsky did not control brokerage accounts owned by the Dubovoys at TD Ameritrade and Merrill Lynch. Mr. Khalupsky had access to those accounts, because the Dubovoys provided his firm, Dolphin Online Trading, with login information and passwords. The Dubovoys retained control over the accounts, and periodically changed the login information and passwords to prevent Dolphin from accessing the accounts.

Mr. Khalupsky should not be held responsible for the entirety of the gain of the conspiracy. Evidence at trial showed that he met and began a business relationship with the Dubovoys in August 2011 and terminated that business relationship in April 2014. The gain Mr. Khalupsky should be accountable for in a guideline calculation is $671,071 for profit in the Dubovoy Merrill Lynch account Dolphin had access to and traded in; and $2,693,605 for profit in the Dubovoy TD Ameritrade account Dolphin had access to and traded in. The total unlawful gain for Mr. Khalupsky's guideline calculation should be $3,310,676. This results in a specific offense increase of 16 points. Please see exhibits A and B.

The victims in the offense were the newswire services, and there were only three, so there should be no guideline increase for the number of victims.

No increase should be applied for a substantial part of the offense taking place outside of the United States. The hacking of the newswire services computers was achieved by hackers located outside of the United States, but the information that was stolen was located in the United States. Furthermore, all of the trading took place in accounts that were located in the United States, all trades cleared in the United States, and all profits were paid in the United States. As a result, there should be no increase for a substantial part of the offense taking place outside of the United States with respect to Mr. Khalupsky's guideline calculation.

Finally, Mr. Khalupsky was not convicted of an offense under 18 U.S.C. §1030, he was convicted of an offense under 18 U.S.C. §371. Furthermore, there was no evidence presented at trial that Mr. Khalupsky was aware of the methods used by the computer hackers to obtain stolen

information. Nor is there any reason to believe that it would be reasonably foreseeable to him that the computer hackers would steal press releases using personal information. None of the overt acts alleged in count two of the indictment describe anyone as having knowledge that personal information was stolen to hack the computers and obtain the press releases. As a result, the enhancement for a conviction for an offense involving an intent to obtain personal information should not be applied to Mr. Khalupsky.

Mr. Khalupsky's guideline calculation should be as follows:

| | | |
|---|---|---|
| ¶70: | Base offense level: (pursuant to guideline 2B1.1; 7+16) | 23 |
| ¶71: | Specific offense level: (conviction under 18 U.S.C. 1956) | +2 |
| ¶78: | Total offense level: | 25 |

**Offender Characteristics**



**Sentencing Options**

21. Page 24, ¶113: In criminal history category I, total offense level 25 results in a recommended guideline range of imprisonment of 57 to 71 months in custody.

4

      22.  Pages 16, 25, ¶¶65, 126: We disagree that Mr. Khalupsky should be responsible for the entirety of the restitution claimed by Business Wire. As detailed in pages from government exhibits presented at trial and enclosed here as exhibits C-1, C-2, and C-3, Business Wire press releases appear to have been hacked almost exclusively in 2015, when Mr. Khalupsky was no longer part of the conspiracy. Mr. Khalupsky should only be required to pay restitution for Business Wire computer security costs in February 2012 and January 2013, when it appears that Dolphin traded in accounts around earnings and guidance reports distributed by Business Wire.

      Thank you for your inclusion of this information in any amendment to the Presentence Report.

                                            Respectfully submitted,

                                            Mildred M. Whalen  
                                            Staff Attorney  
                                            (718) 330-1290

enc.

cc:      The Honorable Raymond J. Dearie  
          Assistant U.S. Attorney Richard Tucker, Esq.  
          Assistant U.S. Attorney Julia Nestor, Esq.  
          Assistant U.S. Attorney David Gopstein, Esq.  
          ECF  
          Mr. Vladislav Khalupsky