**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and
Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

October 15, 2018

The Honorable Raymond J. Dearie
Senior United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**U.S.A. v. Vladislav Khalupsky, 15 CR 381 (S-1)(RJD)**

Your Honor:

  Mr. Khalupsky was convicted after trial of all counts of the above-captioned indictment, which included charges of conspiracy to commit wire fraud, a violation of 18 U.S.C. §1349; conspiracy to commit securities fraud and computer intrusions, a violation of 18 U.S.C. §371; two counts of securities fraud, violations of 15 U.S.C. §78(j); and money laundering conspiracy, a violation of 18 U.S.C. §1956(h). Mr. Khalupsky is scheduled to be sentenced on November 7, 2018 at 10:00 a.m.

  Although the sentencing guidelines as determined by the Probation Department recommend a sentence of custody of 210 to 262 months (although capped in any one count by the statutory limit of 240 months), this guideline determination is based on a flawed analysis of Mr. Khalupsky's membership and role in the offenses of conviction. As detailed in our letter to the Probation Department of September 28, 2018 (Docket entry 350), the applicable recommended guideline range of imprisonment in Mr. Khalupsky's case is 57 to 71 months.

  We respectfully request, however, that the Court impose a sentence of five years of probation, a sentence substantially below the applicable guideline range. As conditions of probation, we ask that the Court impose the conditions of a period of home confinement, community service, and forfeiture of unlawful gain. We are seeking a downward variance from the applicable guideline range because the sentencing guidelines for financial offenses in general are greater than necessary to achieve the goals of sentencing. In Mr. Khalupsky's individual case, the sentencing guidelines do not reflect the lack of gain Mr. Khalupsky received from participation in the conspiracy or the severe personal circumstances Mr. Khalupsky faced during the time of his participation in the conspiracy.

**I. The factors to consider in determining sentence.**

Pursuant to the holding of <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Court is now required to consider all of the sentencing factors enumerated in 18 U.S.C. §3553(a). 18 U.S.C. §3553(a) requires the Court to impose a sentence sufficient, but not greater than necessary, to comply with the sentencing purposes set forth in §3553(a)(2).

**1. 18 U.S.C. §3553(a)(1).**

Pursuant to this factor, the Court is required to consider the nature and circumstances of the offense and the history and characteristics of Mr. Khalupsky

**A. The nature and circumstances of the offense.**

Mr. Khalupsky owned and operated a trading firm called Dolphin Online Trading. Evidence presented at trial showed that Mr. Khalupsky entered into an agreement with Arkadiy Dubovoy to trade in some of his brokerage accounts. Traders at Dolphin were provided with ID and password information to three of Arkadiy Dubovoy's brokerage accounts, and those traders executed trades, within those accounts, using stolen earnings information. However, no one at Dolphin exercised control over these accounts. Arkadiy and Igor Dubovoy had the ability to and did change ID and password information in these accounts, denying Dolphin access at times. Mr. Khalupsky and the traders at Dolphin had no way of directly taking any profits made on trades in these Dubovoy accounts. Instead, Mr. Khalupsky would submit a bill to Arkadiy Dubovoy for commissions based on the success of Dolphin trades in these accounts.

**B. The history and characteristics of Mr. Khalupsky.**

Mr. Khalupsky's personal history is accurately reported in the Presentence report (PSR) at ¶¶86-110, with the exception of the minor corrections that we brought to the attention of the Probation Department in our response to the PSR, dated September 28, 2018.

What the PSR does not detail is the extremely difficult personal circumstances Mr. Khalupsky faced at the time of his involvement in the offense. From 2010 until 2012, Mr. Khalupsky was going through an emotionally ugly and financially difficult divorce with his wife. Shortly after the divorce was finalized in 2012, Mr. Khalupsky's mother was diagnosed with breast cancer. Mr. Khalupsky cared for his mother and focused on finding new and experimental treatments for the disease after the doctors gave up hope when the cancer metastasized. Mr. Khalupsky focused on treatment for his mother until her death on June 1, 2016. Please see exhibit A, an interview with Mr. Khalupsky concerning these circumstances.

Mr. Khalupsky's business suffered during his divorce and his mother's illness, and eventually collapsed after the public announcement of the above-captioned indictment. Mr. Khalupsky has supported himself since his release from custody as an Uber driver, and has

returned to his first love, painting. Mr. Khalupsky had hoped to become an artist when he emigrated to New York and applied to the Parsons School of Design, but was ineligible for city tuition. Given his personal and family circumstances, Mr. Khalupsky looked for work, but continued painting and sculpting as a hobby. Art is his true passion, and we enclose as exhibit B photos of a number of his paintings.

Currently, Mr. Khalupsky lives with his father and in the same apartment building as his grandmother, and provides care for them both. Mr. Khalupsky has been a good friend and relative to many people, who write now in support of him. Their letters are enclosed as exhibit C, and detail the many acts of kindness and support he has given them over the years.

### 2. 18 U.S.C. §3553(a)(2).

The Court is next required to consider the following four factors in determining the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational, or vocational training, medical care, or other correctional treatment in the most effective manner.

### A. A sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

Mr. Khalupsky and his company profited as a result of their trading for Arkadiy Dubovoy, but their profit, as detailed at trial, was only a commission of 10 to 12% of the unlawful gain that Arkadiy Dubovoy received. Mr. Khalupsky did not initiate the scheme and his participation in the scheme was limited. Given the personal circumstances he faced at the time of the conspiracy, a sentence of five years of probation, with conditions of home confinement, community service, and restitution of unlawful gain will be sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

### B. A sentence to adequately deter criminal conduct.

This is Mr. Khalupsky's first offense. He is 48 years old and there is no reason to believe he will ever engage in criminal activity in the future. If Mr. Khalupsky violated the terms of his probation in the future, the sentence he faces for such a violation is any sentence originally available under the statutes or recommended by the sentencing guidelines for the instant offense.

Mr. Khalupsky's lack of a criminal history until this offense, and the penalties he faces for any violation of probation, will make a probationary sentence sufficient to deter criminal conduct in his case.

### C. A sentence to protect the public from any future crimes on the part of Mr. Khalupsky.

The penalties Mr. Khalupsky faces for any violation of probation will serve to protect the public as well.

### D. A sentence to provide needed educational, vocational, or medical treatment.

Mr. Khalupsky is educated and employed, so there is no need to impose an incarceratory sentence to achieve these goals. Mr. Khalupsky is in need of alcoholism treatment and counseling, but these can be provided as part of the terms of his probation. There is no need to impose an incarceratory sentence to achieve these goals.

### 3. 18 U.S.C. §3553(a)(3).

The Court must next consider the kinds of sentences available. Mr. Khalupsky is not subject to any mandatory sentence, so all sentencing options are available to the Court.

### 4. 18 U.S.C. §3553(a)(4).

As stated above and in our letter objecting to the Presentence report, Mr. Khalupsky's total offense level is 25, his criminal history category is I, and his guideline range of imprisonment is 57 to 71 months. However, the economic guidelines have been repeatedly cited as generally higher than necessary to achieve the goals of sentencing because of their focus on loss and the definition of loss.

The American Bar Association (ABA) appointed a task force[1] to look at the reform of federal sentencing for economic crimes. That task force issued a final draft report in November 2014, proposing an alternative to the current guidelines for economic crimes. The report is enclosed as exhibit D, and is available at http://www.americanbar.org/content/dam/aba/uncategorized/criminal_justice/economic_crimes.authcheckdam.pdf.

Although the report and its alternative guideline were not adopted by the Sentencing Commission, they still provide a sensible and rational alternative to the current economic fraud guidelines.

---

[1] That task force included several judges from the Second Circuit, including the Honorable John Gleeson, the Honorable Gerard Lynch, and the Honorable Jed Rakoff. It also included practitioners of note in the Second Circuit, including Jane Anne Murray and Marjorie J. Peerce.

The ABA task force report sets forth a proposed guideline that reduces the specific offense characteristics (SOCs) to the areas of loss, culpability, and victim impact. The areas for Court consideration in determining the amount of the increase or decrease in a specific offense level are set forth in a series of application notes. The main purpose of the ABA's proposal is to limit loss amount as the driving force in economic crime sentencing, and to focus on the nature and degree of culpability of the defendant, as well as the victim impact of the offense.

Using this proposed guideline, Mr. Khalupsky's guideline calculation would be as follows:

| | | |
|---|---|---|
| Base offense level: | 7 | |
| Loss SOC: | 0 | (no actual loss in the offense, only unlawful gain) |
| Culpability SOC: | 0 | (for moderate culpability) |
| Victim Impact SOC: | 2 | (low victim impact) |
| Acceptance of Responsibility: | -2 | |
| Total offense level: | 5 | |

Using the sentencing table from the Sentencing Guidelines, this offense level carries a recommended range of imprisonment in criminal history category I of 0 to 6 months. In choosing offense levels for SOCs, we looked to the application notes provided in the task force report.

The application notes to the Culpability SOC lead to the conclusion that Mr. Khalupsky is not subject to an increase for culpability. The application notes look at the following to determine culpability:
(A) Motive/Nature of the offense: Mr. Khalupsky's offense falls under subsection (2), *legitimate ab initio*: he ran a legitimate day trading organization and crossed over into criminality as a result of unexpected financial difficulties related to his divorce and his mother's illness. These difficulties led him to do business with Arkadiy Dubovoy.
(B) Gain: Mr. Khalupsky's unlawful gain was much less than the unlawful gain of the scheme as a whole. As detailed at trial, Mr. Khalupsky earned only 10-12% commission on the unlawful gain of the accounts his firm traded in.
(C) Degree of sophistication/organization: While the offense reflected a degree of sophistication, Mr. Khalupsky's role in the offense did not.
(D) Duration: The duration of the conspiracy was from February 2010 to August 2015; Mr. Khalupsky's participation was from August 2011 until April of 2014, but Dolphin's active trading on stolen earnings information in the Dubovoy accounts appears to have ended in October 2013.
(E) Extenuating circumstances: as detailed above, Mr. Khalupsky participated in the offense during the financial crises of his divorce and his mother's illness.
(F) Efforts to mitigate: not applicable.

For the above reasons, Mr. Khalupsky would be considered to have a moderate culpability for this offense which results in no points assigned.

5

   The application notes to the Victim Impact SOC lead to the conclusion that Mr. Khalupsky would be subject to an increase for low victim impact.
(A) Vulnerability of victims: the victims were news wire services, businesses, as opposed to individuals facing a financial loss.  Mr. Khalupsky was not involved in the computer hacking of the victim news wire services.
(B) Significance of loss: the loss suffered did not affect the financial soundness of the victim news wire services.
(C) Other non-economic harm: the loss to the victim news wire services was reputational; they were seen by the marketplace as unable to keep their clients' information safe.  This was the significant loss in this case, although there was no evidence that the loss of reputation led to a loss of business for the victim news wire services.
(D) Victim inducement of the offense: not applicable.
   Given that the victim impact was reputational as opposed to significantly economic, Mr. Khalupsky would be considered to have a low victim impact for this offense, and two points would be assigned.

   As noted above, the ABA task force guideline does not focus on economic loss or unlawful gain to determine sentence.  Instead, it focuses on culpability in the offense and victim impact.  This results in a guideline that results in sentencing recommendations that are sufficient, but not greater than necessary to punish the offense and the offender's role in it.  In Mr. Khalupsky's case, it sets forth a recommendation of probation.

   This ABA task force guideline comports with the statutory mandate in 28 U.S.C. §994(j) that:

> "The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense. . . "

All of Mr. Khalupsky's offenses of conviction are non-violent, and all would only be considered serious because of the degree of economic gain some of the participants received. As noted above, Mr. Khalupsky's gain was not of the magnitude of the instigators of the offense.  He did not participate in or arrange for the hacking of the news wire service computers, and thus probation should be considered an appropriate sentence in his case.

  **5.** **18 U.S.C. §3553(a)(5).**

   The Court must next consider whether there are any pertinent policy statements issued by the sentencing commission that would affect Mr. Khalupsky's sentence.  If the Court were to determine that the Probation Department's guideline calculation was correct, several opinions by the Second Circuit would become applicable

6

The Second Circuit has found that a number of the specific offense characteristics in guideline §2B1.1, while not impermissible double counting, are overlapping, and the cumulative effects of this overlapping may permit the Court to downwardly depart. As the Court noted in *United States v. Lauerson*, 362 F. 3d. 160, 162-163 (2d Cir. 2004); 2005 WL 124244 (Jan. 24, 2005)(judgment vacated by the Supreme Court and remanded for further consideration in light of *United States v. Booker*, 543 U.S. 220 (2005)) :

> "[t]he cumulative effects of the overlapping enhancements for the amount of the loss, more than minimal planning, sophisticated means, and leadership of an extensive criminal activity, combined with the significant impact of these enhancements at the higher end of the sentencing table permitted consideration of a departure by the District Court on remand. As we pointed out, 'Most fraud schemes that obtain more than half a million dollars involve careful planning, some sophisticated techniques, and are extensive.'" (quoting from *United States v. Jackson*, 346 F.3d 22, 26 (2d Cir. 2003)).

The Probation Department has assigned several of these overlapping enhancements in their calculation of the conspiracy's, and thus Mr. Khalupsky's, guidelines. The enhancements for the specific offense characteristic of the number of victims (evidence of the extent of the crime), and the characteristics of possession of personal information and a substantial part of the offense taking place outside of the United States (evidence of sophisticated techniques), overlap with the 22 level enhancement for the amount of unlawful gain, alleged in the PSR to have been more than $25,000,000. In the Probation Department's review of this conspiracy, such a loss would not have been possible but for the number of victims, the hacking taking place outside of the United States, and the possession of personal information.

If the Court were to assign this guideline calculation to Mr. Khalupsky's offense, he would be eligible for a substantial downward departure or variance for overlapping enhancements.

### 6. 18 U.S.C. §3553(a)(6).

The Court must next consider the need to avoid unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct. Given Mr. Khalupsky's role in the offense and the facts and sentencing policies detailed above, a sentence of five years of probation, a period of home confinement, community service, and forfeiture of unlawful gain would not create unwarranted sentencing disparity.

### 7. 18 U.S.C. §3553(a)(7).

The Court next needs to determine if there are any victims in the case requiring restitution. While the Probation Department's position is that Mr. Khalupsky, as a member of the conspiracy, should be responsible for the entirety of the restitution claimed by Business Wire, as detailed in our letter of September 28, 2018, the majority of those losses took place when Mr.

Khalupsky was no longer part of the conspiracy. Mr. Khalupsky should only be required to pay restitution for Business Wire computer security costs in February 2012 and January 2013, when it appears that Dolphin traded in accounts around earnings and guidance reports distributed by Business Wire.

## II. Conclusion.

For the reasons set forth above, we respectfully request that the Court impose a sentence of five years of probation, home confinement, community service, and forfeiture of $397,281.12, which represents 12% of the unlawful gains achieved in the Arkadiy Dubovoy accounts that Dolphin traded in. Mr. Khalupsky does not have funds to pay the forfeiture immediately, and respectfully requests a payment plan of 10% of his monthly gross income. This is a sentence sufficient, but not greater than necessary, to achieve the goals of sentencing.

In addition to the letters from family and friends, we enclose as exhibit E a letter from Mr. Khalupsky to the Court, which he would like the Court to consider in determining his sentence.

Respectfully submitted,

Mildred M. Whalen
Staff Attorney
(718) 330-1290

enc.

cc:   Assistant U.S. Attorney Richard Tucker, Esq.
      Assistant U.S. Attorney Julia Nestor, Esq.
      Assistant U.S. Attorney David Gopstein, Esq.
      U.S. Probation Officer Roberta Houlton
      ECF